FRANK W. IIAMS ET AL. v. LAURA S. ROOT ET AL.

Decided January 30, 1900.

1. **Judgment on Citation by Publication—Record—Nonresidence—Collateral Attack.**

In trespass to try title a sheriff's deed of the land was offered in evidence and objected to on the ground that the judgment by virtue of which the execution issued under which the sale was had and the deed made was a personal judgment against a nonresident. The petition in that prior suit recited that the defendant therein was "a man resident of the State of Texas, residing in parts unknown to petitioner," and had an affidavit for publication by the plaintiff written on the back thereof, stating that "the facts therein alleged as to the nonresidence of defendant, are true." The record showed nothing else as to defendant's residence or nonresidence. Held, that the deed was properly admitted, as the record did not show that the defendant was a nonresident, but the contrary.

2. **Same—Affidavit of Publication—Presumption.**

It is not necessary, in order to support a judgment upon service by publication, to show that an affidavit for publication was made, and where the record discloses one that is not in accord with the recitals in the petition, it will be presumed that another and proper one was made.

3. **Same—Evidence Failing to Show Nonresidence.**

Evidence that defendant left Texas and went to Arkansas; was gone about two years; returned in 1845 and stayed about twelve months, then left his family again and never returned, does not show that he was not a resident of Texas in 1848.

**4. Same—Evidence to Show Nonresidence Inadmissible—Presumption as to Jurisdiction.**

In a collateral attack upon the judgment of a domestic court of general jurisdiction, where it does not affirmatively appear from the record that the court was without jurisdiction of the person of the defendant, evidence aliunde will not be heard to contradict the presumption that the court had authority to render the judgment.

**5. Practice on Appeal.**

Where assignments of error are not followed by any proposition it will be presumed that they are not insisted on.

**6. Limitations—Possession.**

See the opinion for facts as to possession held sufficient to support the three and five years statutes of limitations.

Error from Harris. Tried below before Hon. William H. Wilson.

*A. C. Allen* and *A. C. Bullitt,* for plaintiffs in error.

*I. B. Moody,* for defendants in error.

PLEASANTS, Associate Justice.—This is an action of trespass to try title brought by defendants in error against plaintiffs in error to recover title and possession of two-thirds of a league of land patented by the Republic of Texas to John Brock, situate in Harris County, Texas, and fully described in plaintiffs' petition. On the trial of the cause in the court below defendants in error recovered judgment as prayed for, and the case is before us on writ of error sued out by defendants in the court below. Defendants in error deraign title to a portion of the land in controversy through an execution sale under a judgment for costs rendered in the case of Wilson v. Brock in the District Court of Harris County, Texas, on the —— day of May, 1849.

On the trial of this case in the lower court plaintiffs in error objected to the introduction in evidence of the judgment in said cause of Wilson v. Brock, the execution issued thereon and the officer's return upon same, also the officer's deed conveying the land sold under said execution, and excepted to the conclusions of the trial court that the judgment for costs in said case of Wilson v. Brock was a valid judgment. The grounds of such objections and exceptions were that the record in said cause shows that the defendant Brock was a nonresident, and the judgment was rendered upon service by publication, and said judgment for costs being a personal judgment against the defendant Brock, the court was without jurisdiction to render it.

Plaintiffs in error, in their assignments from one to six, inclusive, present the issues raised by the objections and exceptions above stated, and urge this court to reverse the ruling and conclusions of the trial court thereon. These assignments all presenting practically the same question, we will consider them together. We deduce the following facts disclosed in the record in regard to the suit of Wilson v. Brock, viz: The original petition in said cause was filed on the 31st day of July, 1848. The allegations in said petition as to the residence of the parties is as follows:

"Your petitioner W. R. Wilson a resident citizen of the county of Harris and State aforesaid complaining of John Brock a man resident of the State of Texas residing in parts unknown to petitioner." There is no other fact as to residence of the defendant Brock stated in the petition. The original petition has been sent up in the record, and we find that the above question is the plain and unmistakable language of the petition, the word "man" plainly appearing in the petition as above quoted, and entirely separate and disconnected from the word resident. While there is no comma after the word man, we also find that there is no punctuation of any kind in the entire petition.

After the allegations as to parties, the petition sets out a contract alleged to have been executed by the defendant, by which he became bound to execute to plaintiff a deed to the land claimed and described in the petition. The prayer of the petition is, "that upon final hearing your honor decree that the defendant make or cause to be made a good and valid deed to the amount of land to your petitioner as set forth in defendant's bond, and upon the decree to perform his contract specifically. And in default of said defendant to comply with your honor's decree within ten days, that your honor decree that the clerk of the court execute a deed in accordance with defendant's bond or contract to petitioner, and he, the defendant, be compelled to pay all costs of suit."

Upon the back of the petition and in a different handwriting from that in the petition, there is written an affidavit which appears to be signed and sworn to by W. R. Wilson before the clerk of the court on the 31st day of July, 1848. The only statement of fact made by the affiant in this affidavit is "that the facts stated in the foregoing petition as to the nonresidence of John Brock is just and true to the best of his knowledge and belief." The only citation in the record was issued on the 18th day of August, 1848, and is regular in all respects as a citation by publication, and contains no statement as to the residence of the defendant Brock. The judgment was rendered on the second Monday in May, 1849, and recites that defendant had been duly cited by publication, and decreed to plaintiff the relief prayed for by him, and that he have and recover of the defendant John Brock all costs of suit, for which execution may issue.

There is no question as to the correctness of the proposition that, unless it appears from the record that the defendant was a nonresident of the State at the time this suit was brought and service was had by publication,—the court in which the case was tried being a domestic court of general jurisdiction and having jurisdiction of the subject matter of litigation,—it will be conclusively presumed on collateral attack that it had jurisdiction over the person of the defendant, and a personal judgment was properly rendered against him. The presumption in support of a judgment is the same when the service has been by publication as when personal service has been had; and it is not necessary in order to support a judgment upon service by publication to show that an affidavit for publication was made, because the law presumes that such affidavit was

made, and such presumption will exist until the contrary is affirmatively shown by the record.

The law in force at the time the petition in the case of Wilson v. Brock was filed did not authorize service by publication when the residence of the defendant was unknown, but the Act of 1848, which took effect August 1, 1848, the day after said petition was filled, and was in force and effect when the citation in said case was issued and the judgment rendered, did authorize service by publication upon the ground that the residence of defendant was unknown. We do not think the record in said case shows that the defendant Brock was, at the time suit was brought and service by publication had, a nonresident of this State. The petition in the case declared that he was a resident of this State, and the affidavit upon which plaintiffs in error rely for support of their contention, that the record discloses the nonresidence of the defendant, is, we think, a nullity, and the law will presume that another and sufficient affidavit was made. Hardy v. Beaty, 84 Texas, 562. The petition alleging that the defendant was a resident of the State of Texas, but that his whereabouts were unknown to plaintiff, an affidavit by the plaintiff that these facts as to nonresidence are true, can not by any reasonable construction be held to mean that the defendant was, just what the petition declared he was not, a nonresident of the State. We think the trial court properly overruled the objections to the evidence, and properly concluded that the judgment in the case of Wilson v. Brock was a valid judgment and a sale under execution issued thereon passed the title to the land so sold. Murchison v. White, 54 Texas, 85; Treadway v. Eastburn, 57 Texas, 209; Stewart v. Anderson, 70 Texas, 592; Martin v. Barnes, 80 Texas, 679; Witherson v. Schoanmaker, 77 Texas, 615; Fowler v. Simpson, 79 Texas, 611.

Plaintiffs in error attempted to show by proof aliunde the record that John Brock, at the time suit was filed and service had in the case of Wilson v. Brock, was a nonresident of the State, and for this purpose introduced the depositions of Mrs. Allen, who testified that John Brock left Harris County, Texas, in 1843; went to Arkansas; was gone about two years; returned in 1845 and stayed about twelve months; then left his family again and never returned; had been told that John Brock died in Arkansas, but did not know when he died. We think this testimony falls far short of establishing the fact that John Brock was a nonresident of this State in 1848. Given its strongest probative force, it only shows that he never lived with his family in Harris County, Texas, after he left them in 1845, and that at the time of his death, which may have occurred ten or twenty years after judgment in the suit of Wilson v. Brock, he was living in Arkansas.

We do not think this evidence was admissible, because the judgment sought to be attacked was rendered by a domestic court of general jurisdiction, in a case within the jurisdiction of the court, and it does not affirmatively appear from the record of said cause that the court was without jurisdiction of the person of the defendant, and evidence out-

side the record will not be heard to contradict the presumption that the court had authority to render the judgment. "It is so necessary that confidence shall be reposed in courts of high character, as well as in the records of such courts, that, on the whole and in view of all the considerations affecting the subject, it is the only safe rule to give the decisions of courts of general jurisdiction full effect so long as they remain in force, rather than leave them open to be attacked in every way and on all occasions. Being domestic judgments they can, if erroneous, be reversed by proceedings established directly for the purpose, or reversed on error, or by new trial, and if the danger is imminent and special, relief can be temporarily, if not finally, obtained by application to a court of equity. Any other rule with regard to the judgments of such courts would be attended in its application with very great embarrassment, and would be very dangerous in its operation. The general good clearly requires and has therefore established the rule that domestic judgments of courts of general jurisdiction can not be attacked collaterally." Coit v. Haven, 30 Conn., 199; Gulickson v. Bodkin, 80 N. W. Rep., 783; Martin v. Barnes, 80 Texas, 678.

The seventh and eighth assignments attacking the execution and return and the officer's deed, on the ground of insufficiency and uncertainty of description of the land and of the judgment, and the inadequacy of the price for which the land was sold, have no proposition thereunder for our consideration, and we presume said assignments are not insisted on.

The remaining assignments attack the conclusions of the trial court on the question of limitation. From our view of the law of this case as hereinbefore indicated, we do not think it necessary to consider the various issues raised in these assignments. We adopt the entire conclusion of facts found by the trial court as the same appears in the record; and upon the question of the payment of taxes and possession and occupancy of the land, the facts as found by the trial court are as follows:

"The court finds that from and including 1870 to 1883, the plaintiffs and those with whom they are in privity had in each and every year paid the taxes upon the same tract of land, holding the same under a deed duly recorded which properly described the land. That in February, 1870, Joe Shepherd, acting for B. A. Shepherd, the father of the plaintiff, moved upon the tract of land a log house containing one large room with a shed room attached and gallery in front, the house being 16x16. He also had a small smokehouse about thirty feet in the rear of the log house, and four or five acres of inclosed land surrounding the house, and dug a well therein. This house was erected upon the land in controversy on a hill; this became afterwards known as Shepherd's Hill, though the land was frequently known as the Brock land. Joe Shepherd lived in the house from February, 1870, to July, 1870; the house was then vacant from July, 1870, to November, 1871; in 1871, from the first of December or the last of November to January, 1872, one McClelland

occupied the house and land as a tenant of Shepherd.   On January, 1872, McClelland left, and the premises were vacant from January, 1872, to July, 1872, and from July, 1872, to January 12, 1874, the house was occupied by and the premises cultivated by one Sapp; Sapp left the place January 12, 1874, and after Sapp in 1874 one Roach moved upon the land and occupied the premises as a tenant of Shepherd.   What vacancy there was, if any, between Sapp and Roach is not definitely shown by the evidence.   A week or so after Roach left one Clink moved into the premises as a tenant of Shepherd; this was in the middle of January, 1875, and Clink remained there occupying the property as a tenant of Shepherd until the middle of November or December, 1875; premises were then vacant for a few days until January, 1876, when one Ebert moved into the premises as a tenant of Shepherd and lived there until the middle of November, 1876.   In the year 1877 Levi Gibson lived on the land; exactly what time he remained on the land is not shown by the evidence.   In the month of December, 1877, Levi Gibson had left the premises; Gibson and Ebert and all other parties named in these findings occupied the premises as tenants of Shepherd.   In 1878 no one occupied the premises and lived in same as Shepherd's tenant.   One Griffin, who lived in the neighborhood, and was looking after the land in a general way as Shepherd's agent, raised a crop of broom corn in the inclosure that year.   In 1879 one Thompson occupied the land as a tenant of Shepherd for seven months, from near the beginning of the year to about September.   No occupancy and living on the premises was proven from 1880 or thereafter; the house was blown down and destroyed about September, 1882, and was not rebuilt.   When the house was not occupied by tenants, Shepherd had, during the whole ten years, from 1871 to 1880 inclusive, agents looking after the place who lived in the neighborhood, and one of those agents in one year, as before stated, raised a crop of broom corn in the inclosure, and several times cultivated a few potatoes in the inclosure.   The house remained there until 1882 with its inclosure, the inclosure sometimes getting in very bad condition.   That during the vacancy between the occupation by tenants the house was frequently used by stockmen and campers who stopped there a day or two or a week and then moved off.   That the occupancy had by the persons specifically named was as Shepherd's tenants and adverse and hostile to all other persons."

Limitation did not commence to run as to one-half of the land in controversy until January 25, 1874, plaintiffs in error's ancestor, Mrs. Iiams, having been under disability of coverture prior to that time, and the statute was suspended from her death on May 31, 1876, until the appointment of an administrator of her estate on March 23, 1877.

We think the defendants in error have title to the land under the three and five years statute of limitation.   Finding no error in the judgment of the trial court it should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.