## G. C. Stoneman v. John S. Bilby.

Decided May 26, 1906.

### 1.—Tax Suit and Sale—Service by Publication.

In a suit for delinquent taxes the affidavit for service by publication upon a nonresident or unknown owner, required by article 5232o, Sayles' Civil Statutes, is a condition precedent to the court's power to inquire into the merits of the action. A citation by publication is not authorized without such affidavit and a judgment without citation is void.

### 2.—Judgment—Collateral Attack—Rebuttable Presumption.

While on a collateral attack the presumption will be indulged that an affidavit was filed to authorize the issuance of the citation by publication, still this presumption may be rebutted, unless by doing so the record is in some way contradicted; therefore where the record shows affirmatively an insufficient affidavit the said presumption is overcome.

Appeal from the District Court of Scurry County. Tried below before Hon. W. K. Homan.

*H. C. Hughes* and *C. P. Woodruff,* for appellant.—In a collateral attack upon a judgment of a court of competent jurisdiction it will be presumed that all necessary steps were taken to enable the court to acquire jurisdiction, and when an affidavit insufficient to warrant the issuance of citation by publication is found in the record, it will be presumed that a proper and sufficient affidavit was made and that jurisdiction was regularly acquired by the court. Hardy v. Beaty, 84 Texas, 562; Iams v. Root, 22 Texas Civ. App., 416; Dickson v. Moore, 9 Texas Civ. App., 520.

When in a trespass to try title case, a defendant relies upon a tax

deed and shows a valid judgment, order of sale and deed, it is the duty of the court trying the case to render judgment in his favor for the title to the land. Kenson v. Gage, 9 Texas Ct. Rep., 725; Crosby v. Bannowsky, 68 S. W. Rep., 47.

*Ed. J. Hamner,* for appellee.

SPEER, ASSOCIATE JUSTICE.—Appellee instituted this suit in trespass to try title to recover from appellant and another a section of land in Kent County. The defendants pleaded not guilty and the cause was submitted to the court, without the intervention of a jury, who rendered judgment in favor of the plaintiff in the action. The following are the findings of fact made by the trial court, which we adopt: "1. The land in controversy in this suit, being survey No. 2, abstract No. 505, of 640 acres in Kent County, Texas, was patented to W. P. Wilson August 15, 1883, by patent No. 140, in vol. 6.

"Wilson conveyed said land to George S. Roll, by deed dated January 31, 1884; Roll conveyed to O. J. Wiren and F. Cookson by deed dated October 25, 1884. O. J. Wiren conveyed to H. T. Cookson and F. P. Shultz an undivided one-fourth interest in the land, by deed dated April 16, 1887. F. Cookson conveyed by quit claim deed to Dorr Clark and D. C. Plumb, by deed dated March 23, 1895. H. T. Cookson and F. P. Shultz conveyed by quit claim deed, dated January 31, 1895, to Clark and Plumb. Dorr Clark and D. C. Plumb conveyed to Henry G. Weare by deed dated November 20, 1895, this conveyance reciting that the grantee was a resident of Spearefish, South Dakota. A trust deed on the land in controversy was executed by Clark and Plumb to D. T. Bomar June 26, 1895. Clark and Plumb conveyed to Charles L. Ware by deed dated March 1, 1899. Henry G. Weare and John P. Allison conveyed to Charles L. Ware by deed dated March 3, 1899. The Wilkins Land Mortgage Company conveyed the lands in controversy to John S. Bilby, plaintiff in this suit, by deed dated December 5, 1901. Charles L. Ware and the Evans-Snider-Buel Company conveyed this and other lands to plaintiff, John S. Bilby, by deed dated October 31, 1900. Charles L. Ware executed a deed to plaintiff, John S. Bilby, October 2, 1903, for the land in controversy, reciting that this conveyance was made for the purpose of correcting any omission in the description of the land in his previous conveyance to Bilby of March 30, 1900. All the foregoing conveyances were duly acknowledged and placed of record in the deed records of Kent County, Texas.

"2. Suit was instituted in the District Court of Kent County on March 11, 1899, by the county attorney on behalf of the State against 'unknown owner,' to foreclose the lien for taxes on the land in controversy deliquent for the years 1895, 1896 and 1897, aggregating $43.57. The petition in said suit was verified by the affidavit of the county attorney that the averments contained therein are true to the best of his knowledge and belief, but contains no allegation that the owner was a non-resident of the State, or that the owner was unknown and could not be ascertained by inquiry. This petition was on a printed form prepared under the act approved April 13, 1895, and contained the allegation that the delinquent tax record of Kent County, comprising a list of all

lands which had been returned delinquent since January 1, 1885, had been prepared by the comptroller of public accounts; that the land in controversy is embraced therein, and returned delinquent for the taxes since January 1, 1895; that a duplicate of said tax record had been sent to the county clerk of Kent County, and by him recorded in a book styled and labelled 'The Delinquent Tax Record of Kent County,' which was immediately by the clerk certified to the Commissioners' Court of Kent County, published in a newspaper as required by law, and that said court had filed a list of all of said lands so advertised for taxes, including the land in controversy, and caused this suit to be filed. A notice in substantial compliance with the requirements of article 5232o, Sayles' Revised Statutes, addressed to 'unknown owner' and to all persons owning or having or claiming any interest in the land in controversy, was issue on the date of the institution of the suit, and duly published.

"On October 10, 1899, the State filed its first amended original petition in the tax suit, which was the same in all respects as the original petition, except that it alleged that the delinquent tax record had been prepared by the *tax collector of Kent County,* under the provisions of an amended Act 'as enacted by the regular session of the Twenty-fourth Legislature,' that said delinquent tax record had been certified by *the county judge of Kent County,* and delivered by the tax collector to the county clerk, who caused a duplicate thereof to be sent to the comptroller of public accounts.

"On the same date of the filing of this amended petition a judgment was rendered in favor of the State, against 'unknown owner' for the sum of $44.63 taxes due on the land in controversy, adjudging a lien in favor of the State for the amount of taxes, interest and cost, and foreclosing the same—directing the issuance of an order of sale, and that the officer making the sale execute a deed to the purchaser thereat, subject to the right of the defendant to redeem the land within two years from the date of the sale by paying to the purchaser double the amount of money paid by him therefor, and that said order of sale should have the force and effect of a writ of possession as between the parties to the suit or anyone claiming under the defendant, and that the officer place the purchaser in possession of the land within thirty days after the day of sale.

"Order of sale was issued under this judgment on November 8, 1899, and the land sold to the defendant, J. Renfro, on December 5, 1899, for the sum of $80, and the order of sale returned June 9, 1900. A deed was executed by N. N. Rodgers, sheriff of Kent County, the officer making the sale, on December 5, 1899, to the defendant, J. Renfro, for the land in controversy, conveying all the estate, right, title and interest which the said 'unknown owner' had on November 8, 1899, or at any time afterwards, in the land, subject, however, to defendant's right to redeem the land within two years after the date of sale by paying to the purchaser double the amount of money paid by him therefor, which deed was duly acknowledged and recorded in the deed records of Kent County.

"3. J. Renfro conveyed to defendant G. C. Stoneman, by deed dated January 28, 1901, the land in controversy, which deed was duly acknowledged and recorded.

"4. Defendants have held possession of the land claimed by them,

from the dates of their respective conveyances, and have made improvements thereon of the character and to the amount as claimed in their petition. No proof has been made in this case of the value of the land without such improvements, or its value with the improvements.

"5. At the time of the institution of the tax suit against 'unknown owner,' in the District Court of Kent County, to wit: March 11, 1899, the records of deeds of Kent County showed the legal title of the land in controversy to be in Henry G. Weare of Spearfish, South Dakota, and I find that the county attorney of Kent County could have ascertained the name and residence of the owner of said land at the time of the institution of the tax suit, by reference to the deed records of Kent County.

"6. In the judgment of foreclosure rendered in the tax suit on October 10, 1899, there was no recital of notice to or service upon the defendant in that suit, but said judgment recited that the defendant appeared by an attorney appointed by the court to represent the defendant, and I find that the record in said tax suit shows no affidavit by the county attorney that the defendant in that suit was a non-resident of the State, or that the owner of said land was unknown and could not be ascertained by inquiry.

"7. The present suit was instituted on March 26, 1902."

It is sufficient for an affirmance of the judgment if we sustain any one of the three conclusions of law made by the trial judge, and this we do. The findings show that the judgment of foreclosure rendered in the tax suit contained no recital of notice to, or service upon, the defendant in that suit, and that the petition, although sworn to by the county attorney representing the State, contained no allegation that the owner was a nonresident of the State, or that the owner was unknown and could not be ascertained by inquiry. Supplementing the findings of the trial court, we further find that the original petition in the foreclosure suit contained the allegation "that the defendant's place of residence is unknown to plaintiff." The question first arises, does the failure to file the affidavit for service by publication, as required by article 5232o, Sayles' Civil Statutes, affect the jurisdiction of the court to proceed to judgment in the case? That article, so far as pertinent to the inquiry, reads: "Wherever the owner or owners of any lands or lots returned delinquent or reported sold to the state, or that may hereafter be reported sold or returned delinquent for the taxes due thereon for any year or number of years, are nonresidents of the State, or the name of the owner or owners of said land or lots be unknown, then upon affidavit setting out that the owner or owners are nonresidents or that the owner or owners are unknown to the attorney for the State and after inquiry cannot be ascertained, said parties shall be cited and made parties defendant by notice," etc. We think it is to be understood from this language that as a condition precedent to the court's power to inquire into the merits of the action, the affidavit provided for must have been filed. In other words, a citation by publication is not authorized except upon the filing of such affidavit, and of course a judgment without citation may be shown to be invalid if properly attacked. The following authorities appear to treat such omission as a jurisdictional defect: Hardy v. Beaty, 84 Texas, 562; Iams v. Root, 22 Texas Civ. App., 416; Pennoyer v. Neff, 95 U.

S., 714; Coons v. Throckmorton, 25 Ark., 60; Allen v. Smith, 25 Ark., 495; People v. Pearson, 76 Cal., 400, 18 Pac. Rep., 424; Bardsley v. Hines, 33 Ia., 157; Jeffreys v. Hands, 37 Ky., 89; Murdoch v. Hillyer, 45 Mo. App., 287; Gilmore v. Lampman, 91 A. S. R., 376; Beckett v. Cuenin, 22 Am. St. Rep., 399.

This brings us to a consideration of the further question whether or not the failure to file a proper affidavit in the original tax foreclosure suit, can be shown in this, since the attack is collateral. We are not unmindful of the rule laid down in the Texas cases above cited, to the effect that on collateral attack the presumption is that a sufficient affidavit was filed to authorize the issuance of the citation by publication. But we understand the rule to be that this is a rebuttable presumption unless rebutting it involves in some way the contradiction of the record. As before shown, the judgment does not recite the filing of an affidavit or service upon the defendant in the action, but on the contrary the record does affirmatively show an insufficient affidavit (the sworn petition), and in such case the inference is that the service was had upon the defective affidavit, the only one in the record, and the presumption above referred to is therefore overcome. This we understand to be the application of the exact rule announced by us in the cases of Earnest v. Glaser, 7 Texas Ct. Rep., 712; Babcock v. Wolffarth, 10 Texas Ct. Rep., 164; in each of which cases a writ of error was refused.

Holding as we do in these respects, we affirm the judgment of the District Court irrespective of his other conclusions of law, which we find it unnecessary to decide or even to discuss.

*Affirmed.*

Writ of error refused.