GEORGE R. MURPHY ET AL. v. THE SISTERS OF THE INCARNATE WORD, OF SAN ANTONIO, TEXAS.

Decided October 19, 1906.

**1.—Orders of Probate Court Conclusive—Collateral Attack.**

The Probate Court is one of general jurisdiction in matters pertaining to estates, and its orders and decrees must, upon collateral attack, be presumed valid, unless the orders themselves or the record of the proceedings affirmatively show want of authority in the court to make them.

**2.—Same—Sale of Homestead—Minors—Estoppel.**

Even though the record in an administration shows that the property in controversy was homestead, and plaintiffs were entitled to its use as such, and therefore the Probate Court was without jurisdiction to order its sale for the purpose of partition, yet the plaintiffs having actively joined in procuring the sale and having received and retained the purchase money, would be estopped from denying the title of the purchaser at such sale. And the same rule applies to minors and other persons under disability when represented by and acting through their duly appointed guardians, even though no order·is obtained in the guardianship proceedings authorizing the guardian to join in procuring such administration sale or to accept the proceeds thereof.

**3.—Mother's Estate—Disposition by Father—Estoppel.**

When the surviving father assumed to dispose of the entire community estate by his will, evidence considered, and held to estop the children from claiming the interest of their mother in said estate disposed of by the father.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*D. M. Reedy,* for appellants.—To have justified the court in finding that the orders of the Probate Court were conclusive of the rights of plaintiffs and divested title out of them, the court should first have found that the will of Arch M. Murphy, or its prohibitive features, was annulled by a decree of the Probate Court, or that the will was not restrictive of alienation, or that the conditions against alienation had ceased before the sale. A will once admitted to probate must be executed according to the intent of the testator, if that can be ascertained from the will, unless the will is annulled by a direct proceeding instituted for that purpose in the court admitting it to probate. Rev. Stats., 1879, arts. 1938, 1941 (Rev. Stats., 1895, arts. 1991, 1992); Prather v. McClelland, 13 S. W. Rep., 545.

The court having found that this property was the community homestead of Arch M. Murphy and his deceased wife at his death; that Kate Murphy was an unmarried female, a child of said Murphy and wife, living with the family of Arch M. Murphy, and a constituent of it at the time of his death, and when this property was sold; the court should have found that it could not then be sold so as to deprive her of her homestead rights therein. Childers v. Henderson et al., 13 S. W. Rep., 481, and cases cited therein.

An independent executor can set aside the homestead for the use of minor children and unmarried daughters as fully and as effectually as the Probate Court could have done on the application of a guardian to have it so set aside; and he can do any other act necessary to set aside the homestead and exempted property for minor children and unmarried daughter, without any order of the court whatever. And his act in so setting it aside would be as effectual as if done under an order of the Probate Court. Roy v. Whitaker, 92 Texas, 357; McDonough v. Cross, 40 Texas, 280.

The court should have construed items 8 and 10 of the will as prohibiting the sale of this property, or its partition, so long as any child of the testator remained unmarried. Prather v. McClelland, 13 S. W. Rep., 545; Paschal v. Acklin, 27 Texas, 193; Laval v. Staffel, 64 Texas, 372.

*H. M. Whitaker,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by the appellants against appellees to recover the title and possession of a lot and improvements thereon situated in the city of Tyler. The plaintiffs in the suit are George R. Murphy, Pinckney Murphy, Orville Murphy, Kate Murphy, a *non compos mentis,* who sues by her guardian, D. M. Reedy, T. J. Clay, Mrs. Susie Roy, joined by her husband, R. W. L. Roy, and Mrs. Willie Jenkins, joined by her husband, John Jenkins. The petition alleges that the plaintiffs are the owners in common of the premises sued for and that the right to the exclusive possession, use and occupancy of the property is in the plaintiff Kate Murphy and has been since the 1st day of January, 1890,

when she was dispossessed by defendant. Joint recovery of the fee and damages thereto is sought by all of the plaintiffs, and possession and rental value from January 1, 1890, is claimed for the plaintiff, Kate Murphy.

The defendant answered by general denial and plea of not guilty, and special pleas of limitation of three, five and ten years, and of improvements in good faith; and by further special plea in which it is alleged in substance that the property in question was purchased by defendant's vendor under an order made by the Probate Court of Smith County in the administration of the estate of Arch M. Murphy, deceased, through whom plaintiffs claim; that all of plaintiffs were before the court as parties in said administration proceedings, and said order under which said sale was made was obtained by the administrator at the urgent request of plaintiffs and those acting for them; that the money secured from said sale was paid over by the administrator to plaintiffs and was received by them with full knowledge of all the facts, and said sale was ratified and confirmed by plaintiffs, and they having received and continued to hold the consideration therefrom and having made no offer to return the same are estopped to deny the validity of the sale.

The trial in the court below was without a jury and resulted in a judgment in favor of defendant.

From the findings of fact filed by the trial judge we deduce the following as our conclusions of fact: The property in question was the community homestead of Arch M. Murphy and his wife, Elizabeth Murphy, the father and mother of plaintiffs. Elizabeth Murphy died intestate in 1878 or 1879. She left no debts and there was no administration upon her estate. Arch M. Murphy died on December 1, 1886, leaving an estate, the community property of himself and wife, valued at $60,000, and debts amounting to about $5,000. He left a will which was duly probated in the County Court of Smith County in March, 1887. His son, Arch M. Murphy, Jr., was named in said will as independent executor thereof and duly qualified as such executor. The will contained the following provisions:

"Item 6th. It is my further will and desire that my family shall occupy my homestead, so long as they or any of them shall remain single or desire to do so, and that my said son, A. Murphy, shall occupy the same as the head of the family and keep up said homestead and support and maintain said family out of my estate, until my youngest child shall become of age or shall marry, and if the said A. Murphy shall marry in the meantime, that he and his family shall also occupy said homestead, etc."

"Item 8th. It is my further will and desire that all of my property shall be kept together until my youngest child shall become of age or marry, except perishable property, which may be disposed of at the discretion and judgment of my executor, except also as I may direct herein."

"Item 10th. Excepting one-third undivided interest in my stock in trade in my jewelry store, one-third the tools and means used and invested in that business, which I have heretofore bequeathed to my beloved son, Arch, I bequeath and devise all of my estate, real, personal and

mixed of every kind and description to all my children who may be alive at my death, to share and share alike, subject to the charges thereon, in support, raising, maintenance and education of my children as before provided for herein and the legacy and compensation herein provided for Miss Lou Boulware. In this general provision is included A. Murphy, Katherine Murphy, Lena Clay, wife of Thos. Clay, Orville Murphy, Pinckney Murphy, George Murphy and Susie Murphy. But from Lena Clay's share is to be deducted $1,000 which was advanced to her on the occasion of her marriage. But as before stated it is my will and desire that my estate shall be kept together until my youngest child shall become of the age of 21 or marry, and my homestead not then to be divided until it shall cease to be a homestead for my children who may be unmarried. This clause is subject to this qualification and direction. I further direct that my executor shall pay to each one of my children who may be of age or marry, at my death, the sum of one thousand dollars, and to each one the like sum as they may respectively become of age or marry. This does not include Lena Clay; but is intended to make each one of the others up equal to her."

Arch M. Murphy, Jr., resigned as executor of said will in November, 1887, and died in April, 1888. Plaintiff, Kate Murphy, was an unmarried adult living with her father at the time of his death, and she continued to reside at the family homestead with her brother, Arch M. Murphy, until his death and thereafter resided there with her duly appointed guardian until the property was sold as hereafter stated. Arch Murphy, Jr., as head of the Murphy family, resided on this property continuously from the death of his father until his own death in 1888. Soon after his death plaintiff T. J. Clay with his wife Lena Clay moved into the Murphy homestead and assumed to act as head of the family. While living with her brother, Arch Murphy, upon the property in question plaintiff Kate Murphy became insane and has been *non compos mentis* ever since. T. J. Clay was duly appointed and qualified as her guardian in February, 1888, and after he and his wife took possession of the property upon the death of Arch Murphy, Jr., Kate, George and Susie Murphy, all of whom were wards of T. J. Clay, lived with them. Upon the resignation of Arch Murphy as executor in November, 1887, H. M. Whitaker was appointed administrator of the estate with the will annexed and continued to act in that capacity until the administration was closed several years thereafter.

On the 2d day of October, 1889, upon proceedings properly instituted by Orville Murphy, one of the plaintiffs herein, item eight of the will of Arch W. Murphy, Sr., before set out, was annulled by an order of the Probate Court of Smith County. All of the parties interested in the estate were before the court in that proceeding. Items six and ten of the will have never been annulled.

In 1890 H. M. Whitaker filed his final account as administrator and an application to make final settlement and distribution of the property of the estate among those entitled to receive it. This account and application shows an indebtedness due by the estate of $11,000, and that the property belonging to the estate consists of the homestead, a store house in the city of Tyler and a hotel known as the Ferguson house.

The account was approved and commissioners appointed to partition the estate. These commissioners reported that the property was incapable of partition. The appraised value of the property was fixed by said commissioners as follows: Homestead, $12,000; Ferguson House, $25,-000; store house, $10,000. The final account and application for an order authorizing a disposition of the estate was filed by the administrator at the request of all the heirs, including the plaintiffs herein, the minor heirs and the *non compos mentis,* Kate Murphy, acting in that behalf by their duly appointed guardian.

Upon the report of the commissioners as above stated Mrs. Lena Clay, one of the heirs, and through whom the plaintiff T. J. Clay now claims, made it known to the court that she would take all the property at its appraised value, whereupon the court entered an order directing the administrator to convey all of the property to her upon the payment to him of the said sum of $47,000. This money was paid to the administrator by Mrs. Clay, and the property conveyed to her by him, and the conveyance so made reported to and confirmed by the court by an order which divested the title out of the heirs and vested it in Mrs. Clay. The plaintiffs were all before the court when each of the orders before mentioned were made. The title thus acquired by Mrs. Clay was by mesne conveyances passed to defendant on April 2, 1895.

The administrator after paying off the debts of the estate distributed the remainder of the amount received from Mrs. Clay among the heirs, the amount paid to each of said heirs being $4,800. The distributive shares of the minor heirs, George and Susie Murphy and the *non compos mentis,* Kate Murphy, were paid to their guardian, T. J. Clay.

None of this money has ever been refunded or offered to be paid the defendant by the plaintiffs, and all of the plaintiffs except Kate Murphy have accepted and received the benefit of their shares of said consideration for the sale of the property. The guardian of the minor heirs and of Kate Murphy was not authorized by any order of the Probate Court to accept the proceeds of the sale of his wards' interest in the property, or to expend any part thereof for or on behalf of his wards, and it is not shown that Kate Murphy ever received any part of said proceeds or that any part thereof was ever used for her benefit, and there is no evidence that she or her present guardian now have any part of same.

The defendant and all persons through whom they claim had at the time of their respective purchases both actual and constructive notice of the title and interest of the plaintiffs in this property under their father's will and as heirs of their mother.

None of the plaintiffs ever conveyed or otherwise disposed of their mother's one-half interest in the property unless such interest passed by the conveyance to Mrs. Clay before mentioned. Each of the plaintiffs inherited from their mother a one-seventh interest in one-half of the property. The defendant and its vendors have had exclusive and continuous adverse possession of the property since 1890 and have paid all taxes that have accrued thereon except for the years from 1895 to 1904 inclusive, during which time it was used for school purposes and therefore not subject to taxation.

The present value of the property is $12,000 and its rental value ever since its sale to Mrs. Clay has been $30 per month. It has been

damaged to the extent of $1,500 since it came into the possession of the defendant.

The ages and dates of the marriages of the several plaintiffs are not shown by the record, but the trial judge finds as a fact that all of the plaintiffs except George and Kate Murphy are barred by the five years statute of limitation.

Under appropriate assignments the appellants assail the judgment of the trial court upon the following grounds:

First, because the will of Arch M. Murphy prohibited the sale of the homestead so long as any of his children were minors and remained unmarried and it being shown by the evidence that Kate Murphy, one of the testator's children, was unmarried and was living upon the homestead at the time of its sale, the order of the Probate Court directing the sale of the property was void.

Second, because the court having found as a fact that the property in question was the community homestead of the father and mother of plaintiff Kate Murphy and that said plaintiff was a constituent of the family at the time of her father's death and is still unmarried, said property was not subject to sale and distribution so long as she desired to use it as a homestead and therefore the Probate Court had no authority to order its sale, and the trial court should have found the sale void at least insofar as it affects the right of said Kate Murphy to the use and occupancy of said premises.

Third, because the guardian of the plaintiff did not apply for and obtain an order of the Probate Court authorizing him to sell the interests of his wards in the estate of their father and mother and therefore the order of sale made by the Probate Court in the administration of said estate was unauthorized and void as to the interests of said wards.

Fourth, because the act of the independent executor, Arch M. Murphy, Jr., in taking possession of the property under the terms of his father's will and living thereon with the minor and unmarried children of his testator was a setting aside and dedication of said property as a homestead, and therefore the property was not subject to administration and formed no part of the estate in the hands of the administrator and was not subject to sale or distribution in that proceeding.

Fifth, because the Probate Court in the administration of the estate of Arch M. Murphy acquired no jurisdiction of the community interest of plaintiffs' mother in the property in question, no community debts having been shown, and therefore the sale under the order made in said administration did not pass title to plaintiffs' interest in their mother's portion of said property.

We think none of these objections to the judgment is valid. The Probate Court is one of general jurisdiction in all matters pertaining to the estate of deceased persons and its orders and decrees made in the administration of an estate must, upon collateral attack, be presumed valid unless the orders themselves or the record of the proceedings in which they were made affirmatively show want of authority in the court to make them. (Martin v. Robinson, 67 Texas, 374.)

If it be conceded that the record in the administration proceedings shows that the property was homestead and appellants were entitled to its use as such and therefore the court was without jurisdiction to order

its sale for the purpose of partition and no legal title passed by such sale, yet we think the trial court correctly held that appellants by their guardian having actively joined in procuring the sale, and the purchaser at said sale having paid the purchase price of the property, and appellants having received and accepted the benefit of same, such purchaser acquired an equitable title to the property which appellants are estopped from denying while retaining the benefits of the sale. (Dancy v. Strickling, 15 Texas, 557; Ryan v. Maxey, 43 Texas, 195; Stephenson v. Marsalis, 33 S. W. Rep., 385.) The cases cited not only recognize and approve the doctrine of estoppel above stated, but hold that it applies to minors' and other persons under disability, and that such persons are bound by the acts of their guardians in proceedings of this character notwithstanding the fact that no order was shown in the guardianship proceedings authorizing the guardian to join in procuring the administration sale or to accept the proceeds thereof on behalf of his wards.

The will of Arch M. Murphy undertook to dispose of the entire estate, and the application for partition and order of sale dealt with the property in its entirety. The amount paid by the purchaser and received and accepted by the appellants was the appraised value of the whole property. We think under these facts that the estoppel operates against appellants' claim to their mother's interest in the property as well as to the interest of their father.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*