LOPER v. MESHAW LUMBER CO. et al.

No. 1634.

Court of Civil Appeals of Texas. Eastland.
March 19, 1937.

Rehearing Denied April 16, 1937.

Ray H. Odom, of Jacksonville, and Guinn & Guinn, of Rusk, for appellant.

Wm. E. Stone and Box & Box, all of Jacksonville, for appellees.

LESLIE, Chief Justice.

Cowan Loper, as plaintiff, instituted this suit in trespass to try title against the Meshaw Lumber Company, S. J. Jones, and L. D. Woosley to recover title and possession of 400 acres of land known as the James Knox survey in Cherokee county. By trial amendment plaintiff sought partition and division of the property, alleging he was the owner of only an undivided five-sixths thereof, and specifically admitting that the Lumber Company was the owner of the other one-sixth interest.

The defendants (appellees here) answered by general denial, plea of not guilty, and set up title under the five and ten year statute of limitation (Vernon's Ann. Civ.St. arts. 5509, 5510). In the alternative they asked for judgment for valuable and permanent improvements made in good faith.

The trial was before the court without a jury and resulting in a judgment in favor of the defendants for title and possession of the land. The plaintiff appeals, and the parties will be referred to as in the trial court.

The 400 acres in controversy was once owned by T. S. Hatton and wife, Anna Mary Hatton, as community property. The litigants agree they are the common source of title.

Anna Mary Hatton died July 16, 1916. T. S. Hatton, her husband, died January 21, 1924. Three children were born to T. S. Hatton and wife, namely, H. T. Hatton, H. B. Hatton, and Mrs. Irene Howard. These three children survived the mother and father.

The daughter, Mrs. Irene Howard, married John Howard. To her and said husband were born three children, namely, Ingels Howard, born February 10, 1900, Irene Hatton Howard and John Howard, Jr. The father, John Howard, died April 17, 1926.

In May, 1924, Frank L. Devereux was appointed administrator of the estate of T. S. Hatton, deceased. He qualified as such, and in July, 1924, approved a claim of the banking commissioner of Texas against the estate of T. S. Hatton for the sum of $25,000. Nothing further is shown to have been done in the administration of that estate, or by way of disposition of said claim.

January 21, 1921, after the death of the mother, Anna Mary Hatton, and before the death of the father, T. S. Hatton, the daughter, Mrs. Irene Howard, joined by her husband, John Howard, conveyed to B. B. Perkins, by warranty deed, an undivided interest in the said James Knox survey; presumably the one-sixth interest inherited by her in her deceased mother's estate. Said Perkins thereafter, on August 13, 1921, conveyed this "⅙ undivided interest" in the 400-acre tract of land to the Citizens Guaranty State Bank of Rusk for a valuable consideration, etc. At that time he was president of said bank.

November 3, 1924, Perkins & Perkins, attorneys (of which firm B. B. Perkins was a member), instituted suit for the state of Texas to recover the delinquent state and county taxes due on said tract of land, and to foreclose the tax lien securing the same. The defendants named in this suit were F. L. Devereux, administrator of T. S. Hatton, deceased, H. B. Hatton (residence alleged to be unknown), H. T. Hatton (nonresident residing in California), Citizens Guaranty State Bank of Rusk, and J. L. Chapman, banking commissioner. Mrs. Irene Howard was not made a party to this suit, and at that date, November, 1924, she purports to own the one-sixth interest inherited in the estate of her father, who died January 21, 1924. Said tax suit came on for trial December 17, 1924, and was dismissed as to J. L. Chapman, banking commissioner. Judgment was taken establishing taxes amounting to $307.70, costs, etc., with the foreclosure of the lien on said property as against all remaining defendants. Concerning these defendants the judgment recites that Devereux, administrator, H. B. Hatton, and Citizens Guaranty State Bank of Rusk, "although duly and legally personally cited to the present term came not, but wholly made default, and came H. T. Hatton one of the defendants by G. W. Gibson, his attorney heretofore appointed by the court, having been heretofore duly and legally served with citation in this cause by publication, said H. T. Hatton being a non resident of the State, and the court after hearing," etc.; then follows the decree.

At the tax sale under this judgment B. B. Perkins on February 3, 1925, became the purchaser of said 400 acres of land for the amount of the taxes, and he thereafter on February 24, 1925, conveyed the same to the Meshaw Lumber Company, a corporation, for a recited consideration of $3,000, $500 cash and several vendor's lien notes for the balance, one half of which were made payable to H. B. Hatton and the other half to the Citizens Guaranty State Bank of Rusk. As to Perkins, this was a special warranty deed.

The foregoing reflects in part the basis of claim for title by the Meshaw Lumber Company. The plaintiff, Cowan Loper, predicates his claim for title upon the following alleged conveyances:

(1) On May 17, 1934, said Ingels Howard and his mother Irene Howard, a widow, purports to convey the 400 acres of land to Loper for a consideration of $100. This is a warranty deed and conveys the whole tract without limitation as to interest.

(2) June 5, 1934, H. B. Hatton, of Wichita Falls, Tex., quitclaimed his interest in the 400 acres to Cowan Loper for a consideration of $10. This purports to be his one-third interest in the community estate of his deceased father and mother.

(3) October 20, 1934, Ruth Hatton, the widow and sole heir of H. T. Hatton (who died March 1, 1926), conveyed her interest, if any, in the 400 acres of land

to H. K. Black, who in turn conveyed the same to plaintiff Loper November 13, 1934. Black appears to have acquired the land for Loper. The suit was filed after the first conveyance of May 17, 1934, and before the last conveyances just stated.

The record reflects that B. B. Perkins, or his firm, was employed to prosecute the delinquent tax suits for said county, among them, the one above mentioned, and that as such he represented the state of Texas; that he bid in the property for such taxes, paying one half the same himself and the other half being paid by the Hattons, or one of them. The sum bid was applied in full satisfaction of the tax lien, etc.

It further appears from the record that, on November 6, 1923, said H. T. Hatton, of California, made a deed purporting to convey to Ingels Howard, along with other tracts of land owned by him, the land in controversy, or his interest therein. This deed was not recorded until April 13, 1926. It was not delivered prior to the death of the grantor, H. T. Hatton, and Ingels Howard was not aware that the deed had been executed until after H. T. Hatton's death, which occurred March 1, 1926, subsequent to the tax title deed to the Lumber Company of date February 25, 1925. Ingels Howard had no actual knowledge of its ever having been put of record.

The appellant presents 68 assignments of error. The record is voluminous and complicated. Counter propositions are practically as numerous. The trial court has made comprehensive findings of fact and conclusions of law. We shall dispose of the appeal upon those particular assignments deemed to be controlling.

We shall first dispose of that group of assignments complaining of the ruling of the trial court in permitting the introduction of the tax title acquired by B. B. Perkins and conveyed by him to the Lumber Company. This attack also presents the contention that the judgment in the tax suit was void. It is claimed to be void for the following reasons: (1) Because there was no affidavit of the county attorney, or attorney bringing the suit for the taxes, showing that H. T. Hatton was a nonresident of this state such as would authorize the clerk to issue a citation by publication. That such affidavit is a prerequisite to jurisdiction of the court and a valid judgment. (2) Because the citation was defective inasmuch as H. T. Hatton was attempted to be served by publication and one notice was published one time for each of three consecutive weeks, instead of one time each week for four consecutive weeks. (3) Because all parties who owned an interest in the land were not made parties defendant in the tax suit; this contention having special reference to Mrs. Irene Howard, who purported to own a one-sixth interest in the property inherited from her deceased father. (4) That the citation served upon the Citizens Guaranty State Bank of Rusk, Tex., as defendant, was void, rendering the judgment likewise, because the citation required the bank to appear at an impossible date.

■ Contentions 1 and 2 above must be overruled because each involves a simple collateral attack on the judgment of the court of general jurisdiction. As pointed out in a previous part of this opinion, the judgment which appellant would attack recites due and legal service. To rebut this recital in the judgment would involve the contradiction of the judgment record, and the verity of such judgment may not thus be challenged in a collateral attack. Treadway v. Eastburn, 57 Tex. 209; Iiams v. Root et al., 22 Tex.Civ.App. 413, 55 S. W. 411 (writ ref.); Stoneman v. Bilby, 43 Tex.Civ.App. 293, 96 S.W. 50, 52 (writ ref.); Mote v. Thompson (Tex.Civ.App.) 156 S.W. 1105 (writ ref.); Borden v. Patterson, 51 Tex.Civ.App. 173, 111 S.W. 182; Earnest v. Glaser, 32 Tex.Civ.App. 378, 74 S.W. 605; Fowler v. Simpson, 79 Tex. 611, 15 S.W. 682, 23 Am.St.Rep. 370; Jones v. City of Jefferson, 66 Tex. 576, 1 S.W. 903; Williams v. Haynes, 77 Tex. 283, 13 S.W. 1029, 19 Am.St.Rep. 752; Estey v. Williams, 63 Tex.Civ.App. 323, 133 S.W. 470 (writ ref.); Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325; Bendy v. W. T. Carter & Bro. (Tex.Com.App.) 14 S.W. (2d) 813; Newman v. City of El Paso (Tex.Civ.App.) 77 S.W.(2d) 721; Gibbs v. Scales, 54 Tex.Civ.App. 96, 118 S.W. 188 (writ ref.).

■ The third contention that the judgment in the tax suit was void because Mrs. Irene Howard was not made a party to the suit must be overruled. If it be conceded that she owned an interest in the land inherited from her father, who died January 21, 1924, the failure to make her a party would not render the judgment void. A judgment in a tax suit is not void because all parties who own an interest in the prop-

erty are not made parties. Such judgment foreclosing the tax lien is good as against the parties in interest joined in the suit, and parties not joined are not bound by any such judgment. Adams v. West Lumber Co. (Tex.Civ.App.) 162 S.W. 974 (writ ref.); State Mort. Corp. v. Garden (Tex. Civ.App.) 11 S.W.(2d) 212; Newman v. City of El Paso (Tex.Civ.App.) 77 S.W. (2d) 721; Sanchez v. Hillyer-Deutsch-Jarratt Co. (Tex.Civ.App.) 27 S.W.(2d) 634 (writ ref.).

█ The fourth and last contention above stated that the judgment in the tax suit is void, having been rendered on a citation to the bank commanding it to appear at an impossible date, is also overruled. This, too, is a collateral attack on that judgment, which, as pointed out, recites "due" and "legal" and "personal" service on the bank. The point is overruled on the authority of Gutierrez v. Cuellar (Tex.Civ.App.) 236 S.W. 497; Carlton v. Hoff (Tex.Civ.App.) 292 S.W. 642; Stockyards Nat. Bank v. Presnall, 109 Tex. 32, 194 S.W. 384; Stephens v. Turner, 9 Tex.Civ.App. 623, 29 S.W. 937. The authorities cited in the discussion of points 1 and 2 are here referred to for support in principle of this ruling.

Smith v. Buckholts State Bank (Tex.Civ. App.) 193 S.W. 730, and Taylor v. Taylor (Tex.Civ.App.) 157 S.W. 1184, relied on by appellant for this fourth contention, are not in point. There the attack made on the judgment was direct, whereas it is collateral here.

The title of the defendants deraigned through the deed from Perkins stands thus unimpeached, at least to the extent of five-sixths thereof, omitting the one-sixth possible interest inherited by Mrs. Howard from her father. This title to said extent we hold to be in the defendants and superior to those rights asserted by the plaintiff and recently acquired by him through the 1934 conveyances from the Hattons and others above set out. Obviously, the defendants' title is considerably prior in point of time to any claim acquired by the plaintiff, and the latter took his conveyances with both actual and constructive knowledge thereof. Further, he was informed by his grantors at and prior to the delivery of such conveyances to him that grantors made no claim to any interest in the land.

The foregoing conclusions are based upon the paper or record title evidenced by the respective deeds and purported conveyances relied upon by the litigants and above set forth.

We next consider an independent ground upon which we hold that the judgment should be affirmed, establishing the title to the 400 acres as a whole in the Meshaw Lumber Company. The findings of fact and conclusions of law material to the issue under consideration will in part and in substance be set forth in order to reflect more fully the nature of the case and the independent ground supporting the judgment. We here state that in our opinion the findings of fact are supported by sufficient pleadings and testimony on the part of the defendant.

Upon this phase of the case it is the theory of the defendants, as reflected by the pleadings and testimony, that the acquisition of the land by B. B. Perkins through the medium of a tax deed was in itself part only of a scheme or contrivance by which T. S. Hatton and all the other members of the Hatton family placed this and other lands and assets of the T. S. Hatton estate in the management and control of said attorney, with instructions to him to dispose of the same in order to effect the payment of certain debts, and in order to accomplish other matters of a business nature material and beneficial to the Hattons; that said Perkins complied faithfully with the instructions and directions of the Hattons, realized upon the assets in a manner satisfactory to each of them, applied the proceeds in accordance with the agreement, and accomplished in the main the purposes for which he undertook the trust; that his work was satisfactory to the Hattons, who acquiesced in the same through many years and knowingly permitted the purchasers (Meshaw Lumber Company) of said tract of land to go into possession of the same, pay the consideration as directed by them, the taxes annually accruing, and make thereon permanent and valuable improvements in good faith. By such conduct, acceptance, and long acquiescence the Hattons, including the Howards, caused the title to their entire property to be placed in said Perkins and by him transferred in good faith to and established in the defendants.

The interest of said Perkins in the personal and business affairs of the Hattons arose in this way: T. S. Hatton was the principal stockholder in the Farmers Guaranty State Bank of Jacksonville, and his son-in-law, John Howard (husband of Irene Howard), had been president or managing

officer of the same. The bank became insolvent and was closed by the banking commissioner. Due to alleged irregularities, the son-in-law had been indicted in two groups of felony indictments.

At this time an assessment of $25,000 was made against T. S. Hatton and his estate by reason of the bank failure. He owed his son, H. B. Hatton, about $3,500, secured by a lien on the land in controversy. The Hattons' Jacksonville bank owed the Citizens Guaranty State Bank of Rusk, of which said Perkins was president, $4,500. The Hattons and Howards agreed to pay Perkins a $4,000 fee for undertaking the defense of John Howard in the felony cases.

The estate of T. S. Hatton and his deceased wife, Anna Mary Hatton, owed state and county taxes for the years 1920, 1921, 1922, and 1923, amounting to $307.70 on this particular tract of land. Said tax suit was filed on this obligation.

In need of legal services relative to the insolvent bank, the insolvency of his personal estate, and the felony charges against the son-in-law, said T. S. Hatton approached said B. B. Perkins, attorney, with the view of employing him in said matters. Before engaging him to render the services, and in accordance with the specific findings of the trial court " * * * B. B. Perkins, president of said Citizens Guaranty State Bank of Rusk, when approached by John Howard, Mrs. Irene Howard, T. S. Hatton and Ingels Howard, with a view to his employment to defend John Howard in some 5 and 13 felony charges against him in the District Court of Cherokee County, growing out of his handling the affairs of said bank, and with the further view to obtaining his professional assistance in the affairs of T. S. Hatton and the others interested, required of T. S. Hatton, Mrs. Irene Howard and John Howard * * * [that the Rusk bank] be repaid * * * out of resources available to T. S. Hatton and the parties consulting with Perkins which requirement they undertook to meet.

"Perkins further required of the same group at or about the same time that in addition to arranging for the security and payment of said $4,500 they arrange for the payment of a fee for representing Howard for the sum of $4,000."

Pursuant to the agreement effected by Perkins with the above-named parties and acquiesced in and agreed to by H. T. and H. B. Hatton, either in person or by agent and attorney, the land in controversy, along with other lands and assets of the estate of T. S. Hatton and deceased wife, were turned over to said Perkins, to be by him handled and disposed of in a manner which would best accomplish the purposes and best interests of said estate and the best interest of the Hattons, as well as the accomplishment of the defense of John Howard. The purpose of the agreement or trust is well stated in the trial court's findings of fact, viz.:

"The benefits then in the mind of the parties when Perkins took charge were:

"1. Having it so handled as to avoid the demand of the banking commissioner of the State of Texas amounting to some $25,000.

"2. Saving it from loss through tax demands, foreclosure and sale.

"3. Its use, in part at least, toward the payment of the $4500 owing by Hatton's bank, Hatton himself, or Howard, or some of them, all being interested together, to the Citizens Guaranty State Bank of Rusk, as required by Perkins.

"4. Having it applied or used as security for, or payment of Perkins' attorney's fee of $4,000 for defending John Howard, son-in-law of the family, the husband of Mrs. Irene Howard, the father of Ingels Howard, in 5 and 13 felony cases.

"5. Having it applied, in part, toward the satisfaction of T. S. Hatton's indebtedness to his son, H. B. Hatton, secured by a note and secured by a lien on the land in question.

"6. Having any surplus proceeds distributed among the parties interested therein. Whether it reached and accomplished any part of the last benefit, is not shown by the evidence, but the purpose to have it sold and so applied at least in part is made plain by Mrs. Irene Howard's repeated and pressing requests testified to by Perkins that her afflicted brother H. T. Hatton should have his share of the proceeds."

The record facts indicate that in the outset each and all the Hattons and Howards would readily have executed a written instrument conveying said property, or their respective interests therein, to achieve the purposes above stated. The immediate objection or obstacle to pursuing this course was the fact that any such conveyance would have been inferior or second to the claims for taxes and the bank assessment against the estate for $25,000. Hence the circumstances suggested the acquisition of title by Perkins through foreclosure of the tax lien. That was done, and subsequent conveyances followed by virtue of the mu-

tual plans and suggestions of the interested parties herein pointed out.

Upon sufficient testimony the court further finds that the Lumber Company went into possession of the property about February 25, 1925; that it has held open, exclusive, and adverse possession of the same for nearly ten years prior to the filing of this suit; that the consideration paid by Loper for each of the 1934 conveyances was greatly inadequate when compared with the real value of the property; that, when Mrs. Irene Howard, Ingels Howard, H. B. Hatton, and Ruth Hatton, surviving wife of H. T. Hatton, made said conveyances to Loper in 1934, the latter was informed by them, then or prior thereto, that they did not consider that they had any interest in the land to sell.

It is reflected by the pleadings and testimony that Mrs. Irene Howard (who is alleged to have inherited a one-sixth interest. in the land from her deceased father) accompanied her father, T. S. Hatton, to Perkins' office to effect said arrangement for the defense of her husband. She and her husband (while living) consented to have the outstanding equitable title or right to said land placed in others for a purpose beneficial to herself, the Hatton estate, and her husband. This was with their full knowledge during the lifetime of her father and on his death, January 21, 1924, and through many years following (until deed to Loper 1934), they never claimed any interest in this land, or in any way challenged the regularity of its disposition. Certainly on her father's death she was put to an election to repudiate her father's previous arrangement and assert her claim to an inherited interest in the property, or to continue to acquiesce in the same, retaining the benefits derived therefrom. She chose the latter course, knowing the defendants claimed title to the property and were making valuable improvements thereon.

■ Under these circumstances, and in view of the fact that the interests of the estate were represented by the presence of the administrator in the tax suit, we are of the opinion that a complete estoppel operates to bar the right of her, or her assignee, to recover the alleged one-sixth interest in the father's estate.

Based upon the foregoing findings of the trial court and others which it is not necessary to state here, the court concluded, as a matter of law, as follows: "The court further concludes that * * *

the conveyance to Perkins by the Sheriff and Perkins' conveyance to the defendant, all the parties having received direct, substantial benefits from said sale and conveyance, none of them having tendered a return of those benefits, are estopped from retaining the several benefits each received and recovering the property with its improvements from the defendants. The court further concludes that the open, conspicuous possession of the defendants, with outstanding improvements, known or available to every person having any interest in the property, coupled with the relinquishment by silence and acquiescence by all of the descendants of the Hattons [T. S. Hatton and Anna Mary Hatton] including Ingels Howard, while the defendant spent large amounts and expended great labor in improving the property estops them from now asserting title to the property which they did not claim when they had most abundant opportunity while the defendants were improving it and enhancing its value."

The court further concluded as a matter of law that plaintiff, Loper, under the circumstances of the case was not exempt from the estoppel applicable to the grantors of the claim on which he seeks to recover.

Then follows a finding adverse to the appellees upon the claim of title under the five and ten year statute of limitation, and the general conclusion is then reached by the trial court that the "judgment should be rendered awarding the premises to the defendants and that the defendants recover all costs of suit."

The application of the principle of estoppel under the facts and circumstances of this case against the claims of the Hattons or their assignee, Cowan Loper, is, we think, warranted and required by the following authorities and those cited in these opinions: Guest v. Guest, 74 Tex. 664, 12 S.W. 831; Patterson v. Patterson (Tex.Civ.App.) 27 S.W. 837, 838; Murphy v. Sisters, 43 Tex.Civ.App. 638, 97 S.W. 135; Evans v. Snyder, 64 Mo. 516, cited in Dickerson v. Colgrove, 100 U.S. 578, 582, 25 L.Ed. 618; Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582; Moore v. Rochester Weaver Mining Co., 42 Nev. 164, 174 P. 1017, 19 A.L.R. 830.

The pertinent conclusions of the trial court support his judgment, and we sustain the same.

■ In response to other contentions or theories in the case, we are of the opin-

ion that, since plaintiff's suit is one in trespass to try title and the pleadings contain allegations strictly appropriate to such statutory action, the petition was not subject to a general demurrer because of absence of allegations to the effect that no administration was pending upon a decedent's estate and no necessity for such. Pure Oil Co. v. Tunnell, 126 Tex. 57, 86 S.W.(2d) 207; Tunnell v. Moore (Tex. Civ.App.) 53 S.W.(2d) 324; Meade v. Logan (Tex.Civ.App.) 110 S.W. 188, 189.

We are also of the opinion that the facts developed on the trial do not suggest the necessity for administration. The point suggested is immaterial under the facts of this case.

Such assignments as are not directly disposed of by the above conclusions are, we think, rendered immaterial by such conclusions, or they are hereby overruled.

For the reasons assigned, the judgment of the trial court is affirmed.

### On Rehearing.

We have given the appellant's motion for rehearing careful consideration, and we overrule the same with an additional statement and authority in support of our holding that the tax judgment is not void or subject to collateral attack. We refer to "Contentions 1 and 2" under the "Group of Assignments Complaining of the Ruling of the Trial Court in Permitting the Introduction of the Tax Title Acquired by B. B. Perkins," etc.

In overruling said contentions, we cited numerous authorities supporting our conclusions. To these we desire to add the case of State Mortgage Corp. v. Affleck (Tex.Com.App.) 51 S.W.(2d) 274, 276, (approved by Supreme Court). This authority has just come to our attention, and it is so clearly in point sustaining our original views in the respect under consideration that we desire to quote therefrom the following:

"* * * but this is not a direct attack upon said original judgment, and, since that judgment recites that the defendants *had been duly cited by publication*, it must be presumed, as a matter of law, that the defendants were duly cited. The recital in the judgment, which was the last act of the court in that case, reciting that 'the defendants, although duly cited by publication, came not, but wholly made default,' imports, in collateral proceedings, absolute verity. Murchison v. White, 54

Tex. [78], 82; Treadway v. Eastburn, 57 Tex. 209; Heck v. Martin, 75 Tex. [469], 472, 13 S.W. 51, 16 Am.St.Rep. 915; Williams v. Haynes, 77 Tex. [283], 285, 13 S.W. 1029, 19 Am.St.Rep. 752; Martin v. Burns, 80 Tex. [676], 679; 16 S.W. 1072; Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325; Levy v. Roper, 113 Tex. 356, 256 S.W. 251; Harrison v. Orr (Tex. Com.App.) 296 S.W. 871." (Italics ours.)

As pointed out, we are in the instant case considering the question of collateral attack and the recitals in the judgment are general as to service by publication.

Further, in publishing citation in the tax suits, article 7342 provides that the same "be published in some newspaper published in said county one time a week for three consecutive weeks." There is no merit in the point that three weeks' publication was insufficient. In addition, we may say that a re-examination of the record discloses that the service was sufficient.

The motion is overruled.