# CHARLES W. HATHAWAY AND GEORGE P. BAKER *v.* JAMES T. RYAN AND PETER DONAHUE.

FINDINGS OF FACT.—In case of the trial of a cause before the Court without a jury, it is the right of the Judge of the Court to sign and file his findings, whether drafted by himself or another, without notice to the attorneys of the parties; and in doing so his sole duty is to see that they are proper, and in conformity with his view of the facts and law of the case.

IDEM—REMEDIES WHEN DEFECTIVE OR ERRONEOUS.—If there be a material fact, in respect to which the findings are silent, the party aggrieved may except to them by pointing out the particular defect or omission complained of, and if then the Court refuses to correct them, the remedy is by appeal. But if on any material fact the Court finds contrary to or without sufficient *evidence, this is ground for a new trial only.*

IDEM—STIPULATION.—On the trial of a cause before the Court without a jury, the Judge, after announcing orally a decision in favor of the plaintiffs, requested plaintiffs' attorney to draw up in form proper findings; thereafter plaintiffs' attorney drew up and served upon defendants' attorney, successively, three series of such proposed findings, to the first and second of which, when so served, defendants' attorney excepted. The first series was withdrawn by plaintiffs' attorney on presentation of defendants' exceptions thereto. The Judge of the Court refused to sign the second series on consideration of defendants' exceptions thereto. To the third series the defendants' attorney prepared and served on plaintiffs' attorney amendments in the shape of a substitute series—to the adoption of which, in lieu of his own, plaintiffs' attorney dissented, of which he gave defendants' attorney written notice, and therein inquired when the findings should be settled. The third series drawn by plaintiffs' attorney were signed and filed by the Judge without notice given to defendants' attorney or consideration of his amendments thereto; thereupon defendants' attorney moved to vacate and set aside the findings as irregular, on the ground that he was entitled to notice of the time and place of their settlement; which motion being denied, defendants' attorney excepted: *Held,* first, that the transaction did not amount to a stipulation that defendants' attorney should have notice of the time and place of settlement; and, second, that the Court did not err in denying said motion.

ACTIONS *Ex Contractu*—ALLEGATA AND PROBATA MUST AGREE.—In an action *ex contractu,* the complaint, consisting of two counts, alleged, in the first, that defendants were indebted to the plaintiffs in the sum of ten thousand dollars, for the use and occupation of plaintiffs' certain wharf in the City of San Francisco by the defendants, at their instance and request and by the sufferance and permission of the plaintiffs, and that, in consideration thereof, defendants promised to pay said sum to plaintiffs, on request; and in the second count, that at the request of the defendants the plaintiffs had suffered and permitted the defendants to use a certain berth at said wharf for a period and in a manner particularly specified, and that in consideration thereof the defendants promised to pay to the plaintiffs, on request, so much as they reasonably deserved to have therefor, which sum was alleged to be ten thousand dollars. The answer was a general denial. It appeared from the proofs at the trial and the findings of fact filed, that defendants did occupy plaintiffs' said wharf in the manner and for the period

alleged, but was so done neither in pursuance of the express contract alleged by plaintiffs in said first count, nor by the permission or sufferance of the plaintiffs as alleged in said second count, but that said occupancy by the defendants at the time of its commencement was wholly unauthorized by any contract, and was a trespass upon the plaintiffs' wharf : *Held,* that this is an action for use and occupation, and that such action does not lie where the occupation was tortious and not under a contract, or at least permissive.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendants appealed from the judgment and from an order denying their motion for a new trial.

The other facts are stated in the opinion of the Court.

*Doyle & Barber*, for Appellants.

The Court erred in denying appellants' motion to set aside the findings as irregular. In the decision of a Judge rendered on trial without a jury, the facts should be found and stated as distinctly as in a special verdict, and the rule which from all time has been applied to special verdicts, must be applied to such decisions, viz: that if they are drawn up by the counsel for one side, counsel on the opposite side has a right to be heard on the settlement of them, before they are signed or filed. (2 Tidd's Pr. *898, *et seq.;* Graham's Pr. 318; 1 Monell's Pr. 685, 723; *Jones* v. *Block,* 30 Cal. 228:)

The facts as found do not sustain the allegation of either count of plaintiffs' complaint.

Assumpsit for use and occupation will not lie, except where the relation of landlord and tenant (or circumstances from which it may be implied) exists, and to that relation assent on both sides is necessary. (*The Mayor, etc.* v. *Ward,* 2 Strange, 1,239; *Featherstonhaugh* v. *Bradshaw,* 1 Wend. 134; *Pott* v. *Lesher,* 1 Yeates, 576; *Bancroft* v. *Wardell,* 13 Johns. 489; *Smith* v. *Stewart,* 6 Johns. 46.)

*J. W. Dwinelle,* and *E. B. Mastick,* for Respondents.

By the Court, CROCKETT, J.:

The first question to be disposed of on this appeal is one of practice. The cause was tried before the Court without a jury; and the Court having pronounced an oral decision in favor of the plaintiffs, requested the plaintiffs' attorney to draw up in form the proper findings. The proposed findings were accordingly drawn up and served upon the defendants' attorney, who excepted thereto; and thereupon the attorneys appeared before the Judge to have the same settled. On examining the exceptions the plaintiffs' attorney concluded to modify the findings first drawn up, and afterwards served upon the defendants' attorney the new series of findings, and submitted them to the Judge; but on examining the exceptions to them the Judge refused to sign the second series; whereupon the plaintiffs' attorney drew up a third series, which he served upon the defendants' attorney, who thereupon proposed amendments, or rather a substitute therefor, which was submitted to the plaintiffs' attorney, who returned it with a note to the effect, that he preferred his own draft of the findings, and at the close of the note inquired: "When shall we settle them?" Nothing further transpired in respect to appointing a time for settling the findings; and they were afterwards signed by the Judge, without notice to the defendants' attorney, who thereupon moved to vacate and set them aside as irregular, on the ground that he was entitled to notice of the time and place for settling and signing the findings. The Court denied the motion, and this is one of the errors complained of.

It is not denied by the counsel that the Judge may draw up, sign, and file his findings, without notice to the attorneys. But it is claimed that a different rule prevails, when the findings are not drafted by the Judge, but by the attorney of the successful party. We perceive no valid reason for this distinction. It is the duty of the Judge to see that the findings are proper and in conformity with his view of the facts and the law before signing them. Whether the findings be

drafted by himself or another, his duty in this respect is the same, and it is therefore immaterial by whom they are drafted. If they are erroneous or defective, the party aggrieved has his remedy. He is entitled to except to them, and to point out in his exception the particular defect or omission complained of, and if the Court refuses to correct them, the remedy is by appeal. If there be a material fact in respect to which the findings are silent, this is a proper ground of exception to them; and if the Court still refuses to find as to that fact, it will be error on appeal. If the Court finds contrary to the evidence or without sufficient evidence, this is ground for a new trial and not for exception to the findings. It is better in all cases, as a matter of convenience, that the findings be submitted to counsel before they are signed and filed; but the statute does not require it. Nor did the facts in this case amount to a stipulation of counsel that the defendants' attorney should have notice of the time and place of settlement. The motion to vacate the findings as irregular was therefore properly denied.

The complaint contains two counts. The first alleges, in substance, that the defendants were indebted to the plaintiffs in the sum of ten thousand dollars, for the use and occupation of a wharf of the plaintiffs, in the City of San Francisco, by the defendants, at their instance and request, and by the sufferance and permission of the plaintiffs; and that in consideration thereof the defendants promised to pay said sum to the plaintiffs, on request.

The second count avers, substantially, that at the request of the defendants the plaintiffs had suffered and permitted the defendants, by themselves, their servants, and agents, "to use, occupy, hold, and enjoy a certain berth at a certain wharf or dock of the plaintiffs * * * and to place at the said dock or wharf a certain vessel or ship, called the 'Aquila,' and there to remain from the 15th day of January to the 1st day of June, 1864; and also to use, occupy, and enjoy the said wharf for the landing and storing of certain large quantities of goods," etc., and had also suffered and

permitted the defendants to draw, take, and carry away with teams and vehicles, large quantities of merchandise, over, upon, and along said wharf; and that the defendants had accordingly, by the permission of the plaintiffs, placed the said vessel at and alongside said wharf, where she remained for the time aforesaid; and that in consideration of such use of the wharf the defendants promised to pay the plaintiffs, on request, as much as they reasonably deserved to have therefor, which they aver was the sum of ten thousand dollars. The answer was a general denial.

There are certain controlling facts in this action which are established by the findings and proofs, and not controverted by either party, to wit: that the plaintiffs were the owners of the wharf in question, and the defendants were the owners of the cargo of the "Aquila," then lying in the Bay of San Francisco; that a contract was entered into between the defendant Ryan and one Jeffries, the agent of the plaintiffs in that behalf, to the effect that the "Aquila" should come in and occupy a berth at the wharf for a time not limited or defined by the contract. That at the time when the contract was made a gale of wind was prevailing in said bay, and said Ryan insisted on bringing the vessel immediately into the berth engaged for her alongside the wharf; but the agent of the plaintiffs remonstrated against her being brought in until after the gale should have abated, alleging that it would be unsafe both for the vessel and the wharf to have her brought in during the prevalence of the gale; but in defiance of the objections of the plaintiffs, by the direction of Ryan, the vessel was brought into the berth alongside the wharf and fastened to it before the gale abated; that within twelve hours thereafter she foundered, by reason of the gale, and went down alongside the wharf, breaking her fastenings; but the fastenings were immediately renewed by the defendants, and in that condition, sunken and fastened to the wharf, she remained until the cargo was taken out in lighters; that whilst thus lying sunken and foundered, she obstructed the access of other vessels to the wharf; that for some days next

succeeding her sinking, the wharf, by the direction of the defendants, was wholly occupied by the means and appliances used to remove the cargo and raise the vessel.

Other facts were proved and found which we do not deem it necessary to state, in the view which we take of the case.

The Court entered judgment for the plaintiffs for six thousand one hundred and thirty-three dollars and thirteen cents, being at the rate of sixty-eight dollars per day for the time during which the wharf was exclusively occupied by the defendants, and at the rate of thirty-four dollars per day for the remaining period until the vessel was finally removed so that she no longer obstructed access to the wharf.

The action is founded on the *contract* between the plaintiffs and the defendant Ryan, who it is alleged acted for himself and the other defendants. It has none of the features of an action *ex delicto*. In both counts of the complaint the contract is alleged to be the basis of the action. In the first count it is alleged that the indebtedness arose from the use and occupation of the wharf by the defendants, at their request, and by the sufference and permission of the plaintiffs. In the second count the allegation is, that at the request of the defendants the plaintiffs permitted them to use and occupy the berth and wharf on the promise of the defendants to pay whatever sum such use and occupation were reasonably worth.

The first point to be ascertained is, whether or not any contract, express or implied, of the character alleged in the complaint, was entered into, and if so, whether the damages suffered by the plaintiff resulted from a breach of the *contract* by the defendants. It is of the essence of every express contract, that the contracting parties shall have assented to all its provisions. In this case, time was a material element in the contract. Ryan insisted upon bringing the ship into her berth immediately, but the plaintiff did not assent to this. On the contrary, their agent remonstrated against it, alleging that it would endanger both the ship and wharf.

25

The witness Pierce testifies that the plaintiffs' agent, Jeffries, told Ryan that she should not come in then, under any circumstances, nor until the gale abated, and sent off a boat to the ship to order her to drop her anchor, "because there was a southeaster coming up, and then blowing fresh." This evidence is uncontradicted. But in defiance of the plaintiffs' objections, Ryan caused her to be brought in and moored alongside the wharf before the gale abated, when it was "blowing very hard at the time, the wind high and bay rough." It is evident, therefore, that there was no contract that the vessel should be brought into her berth at the time when Ryan caused her to be moored alongside the wharf. It is an absurdity to say that the plaintiffs assented to an act which they positively prohibited to be done. Ryan was, therefore, a trespasser, and wholly unauthorized by any contract to moor the vessel at the wharf at the time when he caused it to be done.

But it does not follow that because there was no express contract the law may not imply one, under certain circumstances. If a trespasser seize the goods of another and convert them to his own use, the owner may waive the trespass and sue *ex contractu* for the value of the goods, and the law will imply a promise to pay. But the action in this case was for use and occupation; and it is well settled that an action of that character will not lie, except where the relation of landlord and tenant exists; or, at all events, where the occupation is permissive, and not tortious. (1 Chitty's Pleadings, 107; *Lloyd* v. *Hough*, 1 How., U. S., 153; *Curtis* v. *Treat*, 8 Shepley, 525; *Ryan* v. *Marsh*, 2 Nott & McCord, 156; *Smith* v. *Stewart*, 6 Johns. 46; *Henwood* v. *Cheeseman*, 3 S. & R. 500, *Bancroft* v. *Wardwell*, 13 Johns. 491; *Featherstonhaugh* v. *Bradshaw*, 1 Wend. 134.)

In *Lloyd* v. *Hough*, the Court says: "The action will not lie where the possession has been acquired and maintained under a different or adverse title, or where it was tortious, and makes the holder a trespasser." And this is doubtless a correct exposition of the law.

In this case, the occupation of the berth at the wharf by the "Aquila" was not only unauthorized by any contract when the occupation commenced, but was positively prohibited by the plaintiffs, and was therefore tortious. The foregoing authorities, and many others to the same effect which might be .cited, establish that in such cases the action for use and occupation is not the proper remedy. It would violate the well established rule that the allegata and probata must agree, to permit a recovery in an action founded on contract, when the proof shows simply a wrongful entry and holding, which was tortious *ab initio*.

The defendants' motion for a nonsuit should therefore have been granted.

Judgment reversed and new trial granted.

Mr. Justice RHODES expressed no opinion.